### Ex parte GREAVES (two cases).

#### (District Court, N. D. California, First Division. April 14, 1915.)

#### Nos. 15762 and 15763.

1. HABEAS CORPUS ⬡⟿92—DEPORTATION OF ALIENS—REVIEW OF PROCEEDINGS.
    In a proceeding to deport an alien, the credibility of the witnesses is solely a question for the immigration authorities, as other questions of fact, and the only question for the court on habeas corpus is whether the immigration officers have exceeded their authority.

    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. ⬡⟿92.]

2. ALIENS ⬡⟿53—DEPORTATION—GROUNDS.
    Aliens, permitted to enter the United States without inspection because of their misstatements to the immigration authorities as to their citizenship, are subject to deportation, whether such misstatements are fraudulently or mistakenly made.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬡⟿53.]

3. HABEAS CORPUS ⬡⟿23 — DEPORTATION OF ALIENS — REVIEW OF PROCEEDINGS.
    The propriety of the policy of deporting aliens who have long resided in the United States, because they obtain entry into the country upon their return after an absence abroad by misrepresenting that they are citizens, is a matter into which the court may not inquire on habeas corpus, as the court cannot interfere with the executive department of the government with respect to questions of policy.

    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 17; Dec. Dig. ⬡⟿23.]

4. ALIENS ⬡⟿46—DEPORTATION—REVIEW OF PROCEEDINGS ON HABEAS CORPUS.
    Aliens unlawfully entering the United States without inspection by misrepresenting that they were citizens, and therefore subject to deportation, could not complain on habeas corpus that the immigration officers were led to a rigid enforcement of the law against them because of acts subsequent to their admission not rendering them subject to deportation.

    [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. ⬡⟿46.]

Applications for writs of habeas corpus by Rebecca Greaves and by Phyllis Seymour Greaves. On demurrer to the petition in each proceeding. Demurrers sustained.

Denson & Denson and Catlin & Catlin, all of San Francisco, Cal., for petitioners.

John W. Preston, U. S. Atty., and Walter E. Hettman, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

---

DOOLING, District Judge. Two separate petitions for writs of habeas corpus having been presented to the court, the government demurs to each of them. As they present the same questions, they will be considered together.

The petitioners, Rebecca I. Greaves and Phyllis S. Greaves, are mother and daughter. The mother is now over 50 years of age and the daughter in the early 20's. The former was born in England, the latter in Canada, and neither is a citizen of the United States. In April, 1913, they arrived at New York in the Mauretania from Liverpool, and were landed without inspection, because of the statement made by the mother that she was a citizen of the United States. This statement was based upon the fact that her deceased husband had declared his intention to become a citizen, although never having completed his naturalization. Whether this statement was made for the purpose of deceiving the immigration officers, or because Mrs. Greaves was honestly mistaken in the belief that she was a citizen, is a question much discussed, but absolutely immaterial. There is testimony in the record that she told Richardson, one of the witnesses, "that when she came to this country on different occasions she always stated she was a citizen of the United States for the sake of convenience, not to be bothered much by the immigration authorities, and that the trick always worked."

[1] The arguments addressed to the court as to the credibility of Richardson are misdirected, as that question is one solely for the immigration department, as is also every question of fact passed upon by them. The law is quite plain and very well settled. The question to be determined here is not, What would the court do if the matter were presented to it in the first instance? The sole question is, Have the immigration officers exceeded their authority?

[2, 3] Under the Immigration Law (Act Feb. 20, 1907, c. 1134, 34 Stat. 898) all aliens arriving in this country are to undergo investigation as to their right to land. From such investigation citizens of this country are free. If an alien lands without such investigation, because of misleading statements as to his citizenship, he is subject to deportation. Nothing in the law is better settled than this. Indeed, any other construction would, as stated by the court in Williams v. U. S., 186 Fed. 479, 108 C. C. A. 457, "render the Immigration Act abortive."

As to the policy of deporting the petitioners here, in view of their long previous residence in this country, this is a matter into which the court is not at liberty to inquire. It might seem to the court that the rational thing to do would be to investigate now their right to land as aliens, and to permit them to remain, if such right were established. But the court has no power to direct the method by which the executive officers shall administer the law. The enforcement of the immigration laws is committed to the Department of Labor, and the deportation of petitioners, because, being aliens, they entered the country without the preinvestigation which the law requires, is well within the power of the Department. The court is no more authorized to interfere with the executive department, or to question its policy, when

acting within the authority conferred upon it, than such department is authorized to interfere with the court. The power of the court is limited to the inquiry, "Is the action of the executive within the law?" If it is, the remedy for any supposed hardship resulting therefrom is by application to the executive to be relieved from such hardship, and not by appeal to the court to prevent the enforcement of the law.

In the present case much is said concerning the unfairness of the hearings. But this complaint goes only to collateral matters, as the real fact which is the basis of the order of deportation is not in dispute. This basic fact is the entrance into this country of the aliens without the inspection which the law requires. This was brought about by their claim to be citizens, and, whether this claim was fraudulently or mistakenly made, the result was the same. It secured their admission without examination, and rendered their entry unlawful.

There is much in the record showing the relations existing between petitioners and one B. N. Northrup, a married man upon the complaint of whose wife these proceedings were inaugurated. There is nothing in these relations which would render petitioners subject to deportation, if their entry into the country had been lawful. It may be, however, that these relations have led the immigration officers to a rigid enforcement of the law against petitioners; but, if so, they are not in a position to complain. In this regard I do not wish to be understood as imputing to the petitioners, or either of them, any conduct which they themselves do not admit. This subject is touched upon only because counsel seem to think that the court should inquire closely into the motives which actuated the immigration officers in the investigations which led up to the order of deportation. If the court did so inquire, the order would not be disturbed.

It is also urged that subsequent to their entry their right to remain was once before inquired into. This is true, but the inquiry led to nothing, as the inspector reported that petitioners were citizens, and hence not subject to deportation. The warrant of deportation is sufficiently definite, and under it petitioners will be sent back to England, whence they last came. If the daughter would prefer to be sent to Canada, her birthplace, an application to that end should be made to the Department of Labor.

The order of deportation appearing from the record to have been made after a full hearing, and being within the authority of the Department of Labor upon the facts and the law, it is ordered that the demurrers be sustained.