**UNITED STATES ex rel. BARCHI v. DAY, Commissioner of Immigration.**

District Court, S. D. New York.
March 14, 1930.

Gaspare M. Cusumano, of New York City, for relator.

Charles H. Tuttle, U. S. Atty., of New York City (George B. Schoonmaker, of New York City, of counsel), for the United States.

WOOLSEY, District Judge.

The writ herein is dismissed.

This result seems to me inescapable under the facts of this case to which I have given the most careful consideration.

It is quite true, as is contended in the relator's behalf, that when he first came here on October 14, 1923, as part of the Sistine Choir he could have availed himself of the fact that he was a singing artist and have stayed here legally, irrespective of the quota, and irrespective of the terms of his admission. U. S. ex rel. Gentile v. Day (C. C. A.) 25 F.(2d) 717.

Unfortunately for him, the relator did not do as Gentile did, but left for Italy with the Sistine Choir on May 2, 1924, returning again on November 29, 1924, when the Immigration Act of 1924 had come into force, and when he could only be admitted under section 3(2) of the Immigration Act of 1924 (8 USCA § 203(2) as "an alien visiting the United States temporarily as a tourist or temporarily for business or pleasure."

On the occasion of the relator's admission on November 29, 1924, he gave his permanent residence as Rome, Italy, and stated his purpose was to remain here three weeks. He was accompanied by fifteen other singers, and he secured a transit certificate permitting him to go to his destination San Francisco, Cal.

On April 4, 1925, the relator left for Italy and returned to the United States on September 22, 1925. On this occasion he gave his last permanent residence as New York City, and stated that his purpose in coming to this country was to remain six months. He had a nonimmigrant visa and was admitted, with permission to remain six months under section 3(2) of the Immigration Act of 1924. The period during which he was allowed to remain expired in March 1926.

An application was made by the relator on August 14, 1929, to have his status recognized as one of permanent residence, under the Quota Act of May 19, 1921, section 2(d), 42 Stat. 6, based on his arrival, as an artist, in October, 1923. This application was denied on October 7, 1929, and a warrant for his arrest for deportation issued on that date.

Hearings were had before an Immigration Inspector at Ellis Island and thereafter a warrant for the relator's deportation issued on December 21, 1929, in which he is given the alternative of deportation or leav-

ing voluntarily for any country of his choice, except foreign contiguous territory or adjacent islands.

The relator's Italian passport, dated at New York, April 4, 1925, and secured for his last trip to Italy, contains a statement that he intends to return to the United States within six months from the date of his departure. This is the only and earliest statement of his intention to take up a permanent residence in the United States, assuming it can be so construed when read in connection with his statement made on his return from Italy on September 22, 1925, that his last permanent residence was New York City.

I think that, assuming this was a declaration of intention, it came too late.

I do not think that this record is sufficient to establish a contemporaneous intention on the relator's part to remain here as a permanent resident, on the occasion of his first arrival on October 14, 1923, when the way was open for him to remain here as an artist under section 2(d) of the Quota Act of May 19, 1921 (42 Stat. 6) as amended May 11, 1922 (42 Stat. 540).

Gentile, in the case above cited, left his band and by his act, showed his intention to remain here; the relator, on the other hand, stayed with his choir and returned to Italy as a part of it.

Ex post facto declarations of intentions which do not accord with contemporaneous acts and statements cannot be received with hospitality by those who are charged with enforcing our immigration laws.

Section 23 of the Immigration Act of 1924 (8 USCA § 221) puts the burden of proof on the relator in any deportation proceeding to establish his right to remain.

The department has found against the relator on the record which is before me.

Paraphrasing a remark in a recent opinion of the Circuit Court of Appeals for this circuit, I think that on this record a board of impartial men might properly conclude that the relator's intention, on the occasion of his first arrival in October, 1923, to remain permanently in the United States is at least in doubt. The finding of the department, therefore, should not be disturbed. Cf. U. S. ex rel. Fong Lung Sing v. Benjamin M. Day (C. C. A.) 37 F.(2d) 36, decided January 6, 1930.

If, however, there be any way in which the department can in this case ameliorate the strict rule that owing to the provisions of the Act of March 4, 1929, c. 690, § 1(a),

45 Stat. 1551, an alien who has been deported may not again enter the United States, I bespeak such clemency for this relator who, either through ignorance of our often changed immigration laws, or in pursuance of poor advice, seems to have made what would really be equivalent to a procedural mistake, in other branches of law, in not coming here in 1925 on a quota basis.

As it seems that the relator would be in all respects satisfactory as a permanent resident of the United States, it is to be hoped that by letting him leave voluntarily the department may be able to spell out some way in which his subsequent return, as part of an Italian quota, may be allowed.

Perhaps such appropriate provision can be made in the order to be entered herein, as will enable the relator hereafter to apply for admission without risking the severe penalties of the Act of March 4, 1929.

Settle order on three days' notice.